**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

LAURIE LEIGH WELLINGTON,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

CASE NO. 1:14-CV-1207-SMS

ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER

(Doc. 19)

Plaintiff Laurie Leigh Wellington, by her attorney, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) (the "Act"). The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge. Following a review of the complete record and applicable law, this Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based on proper legal standards.

## I. Background

### A. Procedural History

In December 2009, Plaintiff applied for disability insurance benefits and supplemental security income alleging an onset of disability date of December 24, 2008. The Commissioner initially denied the claims on July 14, 2010, and upon reconsideration again denied the claims on September 20, 2010. October 15, 2010, Plaintiff filed a timely request for a hearing.

On June 8, 2011, and represented by counsel, Plaintiff appeared and testified at a hearing presided over by Timothy S. Snelling, Administrative Law Judge ("the ALJ"). See 20 C.F.R. 404.929 et seq.

On July 22, 2011, the ALJ denied Plaintiff's application. The Appeals Council denied review on August 21, 2012. Plaintiff filed a civil action. The Commissioner stipulated to a voluntary remanded the case, and the Appeals Council vacated the Commissioner's final decision.

On February 27, 2014, and represented by counsel, Plaintiff appeared and testified at a second hearing before the ALJ. An impartial vocational expert, George A. Meyers ("the VE"), also appeared and testified.

On April 4, 2014, the ALJ denied Plaintiff's application. On July 31, 2014, Plaintiff filed a complaint seeking this Court's review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

B. Plaintiff's Testimony – June 2011

At the time of the hearing in June 2011, Plaintiff was forty-five years old. She testified that she last worked in December 2008 in retail, stocking and register. She had to call in sick frequently because of her chest pain and anxiety. She also had pain in her shoulders, neck, arms, hips, and legs. She was in pain all day except for a few hours while sleeping. She was diagnosed with fibromyalgia and took Vicodin and baclofen for the pain. The medication reduced the pain for about an hour, but would get stronger after the hour. Physical activities made her pain worse.

Plaintiff also testified that she had anxiety all the time. She would be afraid of noises, being alone, and hypothetical bad situations. When left alone, her heart started beating quickly and she could not breathe. She had chest pains and would call an ambulance. She went to the emergency room two to six times a month. Someone was home with her at all times. She was prescribed Klonopin for anxiety by her primary care provider. She did not take it every day, but whenever she had an anxiety attack, approximately three or four times a week. She testified that the medication worked immediately, but it did not remove the anxiety completely. Medication took away the symptoms of rapid heart rate and shortness of breath. Plaintiff testified that she began to have anxiety in an intense disabling way around December 2008. Plaintiff had not seen a psychiatrist. She began seeing a therapist once a month in 2009. She did not feel that the therapy

sessions helped, but the therapist taught her to do breathing exercises which she continued to do. Plaintiff also testified that she had problems sleeping because she had bad dreams about her ex-husband.

Plaintiff had three children, aged twenty-one through twenty-six, and lived with the younger two and a friend of one of the children. On a normal day, she gets up and does some dishes and other “little things,” taking rests in between. She goes grocery shopping with a friend or relative. Her mother helps drive her to doctor visits and to stores. She does not drive or have a valid driver’s license. It is painful for her to walk.

Plaintiff worked as a certified nursing assistant from 1996 to 1999, and in retail customer service from 2005 to December 2008. The record indicates there were several significant gaps in her work history.

C. First Disability Determination – July, 2011

After considering the evidence, the ALJ found that Plaintiff last met the insured status requirements of the Act on December 31, 2008. He found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of disability. The ALJ found that Plaintiff had the following medically severe combination of impairments: history of acute coronary syndrome, fibromyalgia, polymyalgia rheumatic, hypertension, gastritis, chronic obstructive pulmonary disease, post-traumatic stress disorder, and anxiety disorder with frequent palpitations. The ALJ found that Plaintiff did not have an impairment that met or medically equaled the severity of a listed impairment. He found that Plaintiff had the RFC to perform light work but could only bend, stoop, and climb ramps or stairs occasionally, should never climb ladders, ropes or scaffolds, and should avoid concentrated exposure to pulmonary irritants. The ALJ found that Plaintiff had a limited ability to understand, remember or carry out complex or detailed job instructions and should have no more than occasional interaction with the general public. The ALJ concluded that Plaintiff was unable to perform her past relevant work. However, the ALJ found that Plaintiff’s physical and mental impairments only minimally impacted Plaintiff’s potential unskilled occupational base at the light exertion level, and concluded that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform. Hence, he

determined that Plaintiff had not been under a disability from the alleged onset date through the date of his decision.

D. Additional Proceedings –February 2014

After the parties stipulated to a voluntary remand in the District Court, further proceedings were held in February 2014. At the hearing in February 2014, Plaintiff was forty-eight years old. She testified that she had completed high school, graduated as a medical assistant, and received training to become a certified nursing assistant ("CNA"). As a CNA, she took care of people in a nursing home. She was required to move patients on her own, but had assistance when the people were very big. She injured herself once when a patient buckled his knees and she carried him to the wheelchair.

Around December 2008, Plaintiff was working in retail customer service in a department store. She was calling in sick because she was having a lot of anxiety attacks and was in the hospital often. It was also becoming too difficult to hold up her arms. Her employer put her on medical leave, but she continued to get worse. Her employer contacted her and informed her they were terminating her employment. She tried taking classes at a junior college in 2009 but it was too difficult for her to sit and type or work at the desk.

Plaintiff testified that fibromyalgia caused her to be foggy in the mornings and caused pain all day in her head, neck, shoulders, arms, back, hips, and legs. She would take her medication and use heating pads. She was taking Vicodin, hydrocodone, baclofen, and ibuprofen. The medications made the pain bearable, but did not take it all away. She had drowsiness from fibromyalgia and the medications. She slept every few hours and lied on a heating pad on and off all day. Plaintiff testified that her doctor told her to be careful and know her limits. He did not recommend surgery. Plaintiff testified that her back pain limited her ability to stand, sit, lift, and do chores. She could only sit for fifteen minutes before lying down on the heating pad due to pain. She could stand for fifteen to twenty minutes before the pain caused her to need to lie down. She could lift no more than ten pounds.

Plaintiff testified that she was diagnosed with post-traumatic stress disorder ("PTSD"), anxiety, and memory problems. PTSD affected her by causing fear, and a dislike of dealing with

people and situations. She testified that she had an anxiety attack for fifteen to twenty minutes every day. During an anxiety attack, she could not breathe, her heart beat quickly, and she became sweaty, dizzy, and weak. She was not taking medication for anxiety at that time because she had not found one that worked for her. Plaintiff had a chemical sensitivity which caused adverse reactions, such as diarrhea and vomiting, to medications. She saw her primary care physician and therapist once a month, but occasionally forgot her appointments and would see them the next month. She would forget her appointments and medications. Her sons helped her remember things.

Plaintiff lived with her son and two of her friends. She spent time with her grandchildren and her son every day. She could not vacuum or sweep, but could do some dishes here and there and wash and fold laundry. Her son carried the laundry. Plaintiff made food for herself, such as mashed potatoes or baked chicken.

Plaintiff did not trust people, and her lack of trust worsened in about 2008. She once had a gun pulled on her while working, and was robbed while she was at work. Plaintiff believed she could not work because she would be in pain all day long and she had anxiety.

E. Vocational Expert Testimony

At the February 2014 hearing, the VE classified Plaintiff's past work as nurse assistant (DOT # 355.674-014, medium, SVP 4, performed at very heavy) and labor store for retail (DOT # 922.687-058, medium, SVP 2). The ALJ asked the VE to assume a hypothetical person who was between forty-three and forty-eight years old, with a twelfth-grade education and some vocational training in the convalescent home nursing field, and past work experience characterized by the VE. The hypothetical person was restricted to light work with no climbing ladders, ropes, or scaffolding; occasional stooping, crouching, crawling, and kneeling; no concentrated exposure to temperature extremes, hazards, and pulmonary irritants; occasional face to face interaction with the general public; occasional ability to understand, remember, and carry out complex and detailed instructions; and occasional performing jobs in a cooperative team setting. The VE testified that such person could not perform Plaintiff's past work. After clarifying that an elderly person in the home is not considered the public, the VE opined that this hypothetical person could perform the

position of companion (DOT # 309.677-010, light, SVP 3), production assembler (DOT # 706.687.010, light, SVP 2), office help (DOT # 239.567-010, light SVP 2), and inspector/hand packer (DOT # 559.687-074). These jobs had significant numbers in the State and national economy.

The ALJ then directed the VE to assume a second hypothetical person with the same limitations as the first, but with the additional limitation that, due to pain and psychiatric symptoms, the individual would be unable to complete a normal work day or work week up to seven days per quarter. The VE could not name any jobs that such a person could perform.

For the third hypothetical, Plaintiff's counsel directed the VE to consider an individual with the same limitations as the first hypothetical person but also had a moderate limitation in the ability to understand and remember detailed instructions, moderate limitation in the ability to carry out detailed instructions, moderate limitation in the ability to work in coordination or proximity to others without being distracted by them, and a moderate limitation in the ability to complete a normal work day and work week without interruptions from psychologically-based symptoms. "Moderate" was defined as an obvious limitation to others. The VE opined that this third hypothetical person would not be able to maintain or sustain employment in the national economy.

For the fourth hypothetical, Plaintiff's counsel also began with the same limitations as the first hypothetical person, but added difficulties performing detailed or complex tasks in a work setting, difficulties with regular attendance and consistent participation due to complaints of pain and anxiety, and difficulties working a normal work day and work week because of complaints and anxiety. This hypothetical person was capable of performing simple, repetitive tasks and following simple, verbal instructions from supervisors, but may have had some difficulties getting along with supervisors, coworkers, and the general public, and may need special or additional supervision to help manage interpersonal relationships in a work setting. The VE agreed that this hypothetical person would not be able to perform the additional jobs previously identified.

F. Second Disability Determination – April 2014

In his second decision, the ALJ again found that Plaintiff met the insured status requirements through December 31, 2008 and that Plaintiff had not engaged in substantial gainful

activity since the alleged onset date of disability. In addition to the medically severe combination of impairments he found in his July 2011 decision, the ALJ found that, between the alleged date of onset of disability and during the period adjudicated, Plaintiff also had the following medically severe combination of impairments: degenerative disc disease of the thoracolumbar spine, panic disorder, dependent personality disorder, a history of transient ischemic attack, a history of chronic pain syndrome, a brief history of hypotension, non-displaced oblique fracture of the left foot, myalgia and myositis, and a bipolar disorder, manic, not otherwise specified. The ALJ found that Plaintiff did not have an impairment that met or medically equaled the severity of a listed impairment.

The ALJ found that, prior to May 26, 2010, Plaintiff had largely the same RFC he determined in his July 2011 decision. The ALJ made a few clarifications and added that Plaintiff could perform jobs involving individual effort, but could no more than occasionally perform jobs in a cooperative team setting.

The ALJ found that, beginning May 26, 2010, Plaintiff had the RFC to perform a substantially reduced range of light work. He found that her RFC was the same as it had been prior to May 26, 2010, but, due to pain, psychiatric symptoms, and anxiety attacks, Plaintiff was unable to complete a normal workday or workweek up to seven days per quarter.

The ALJ concluded that Plaintiff was unable to perform her past relevant work. The ALJ found that prior to May 26, 2010 there were jobs that existed in significant numbers in the national economy that the claimant could have performed, but, beginning on May 26, 2010, that there were no jobs existing in significant numbers in the national economy that Plaintiff could perform. Hence, he determined that Plaintiff was not disabled prior to May 26, 2010, but became disabled on that date and has continued to be disabled through the date of the decision. Thus, Plaintiff was not under a disability at any time through the date last insured –December 31, 2008.

## II. Legal Standard

### A. The Five-Step Sequential Analysis

An individual is considered disabled for purposes of disability benefits if she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or

mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment(s) must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). In the five-step sequential review process, the burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five. *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Id.* at 1098–99; 20 C.F.R. §§ 404.1520, 416.920.

In the first step of the analysis, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the second step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the third step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments, 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the fourth step, the ALJ must determine whether the claimant has sufficient RFC, despite the impairment or various limitations to perform his past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g).

B. Standard of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). If an ALJ applied the proper legal standards and the ALJ's findings are supported by substantial evidence, this Court must uphold the ALJ's determination that the claimant is not disabled. *See, e.g., Ukolov v. Barnhart*, 420 F.3d 1002, 104 (9th Cir. 2005); *see also* 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1998 (9th Cir. 2008). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Where the evidence as a whole can support either outcome, the Court may not substitute its judgment for the ALJ's, rather, the ALJ's conclusion must be upheld. *Id*.

**III. Discussion**

Plaintiff contends that the ALJ failed to make a legally sound determination of the disability onset date. Plaintiff argues that the ALJ found the onset date to be May 26, 2010 because that was the date of her consultation with examining psychiatrist Philip M. Cushman, PhD., who noted substantial work limitations. Plaintiff argues that Plaintiff's symptoms noted in Dr. Cushman's opinion did not "magically appear" on the date of her examination, and that a medical expert should have been called, or further proceedings were necessary, to determine an unclear disability onset date.

The Commissioner argues that prior to May 26, 2010, Plaintiff sought treatment primarily for physical ailments and the evidence failed to establish that she had disabling limitations that precluded her from working. The Commissioner further argues that the ALJ properly found that Plaintiff began having credible subjective complaints beginning May 26, 2010, after which she reported an increase in symptoms and received regular specialized mental health care.

A. Applicable Law

Plaintiff must establish her disability began before her date last insured. 20 CFR § 404.131. Plaintiff was last insured on December 31, 2008.

When an impairment is slowly progressive, precisely determining the onset date, or the date the impairment became disabling, may be impossible, and must be inferred from the medical and other evidence that describe the history and symptomatology of the disease process, including the applicant's allegations and work history. SSR 83-20, 1983 SSR LEXIS 25. The ALJ's judgment how long the impairment existed at a disabling level of severity must have a legitimate medical basis. Id. Determining the proper onset date is particularly difficult when the alleged onset and date last worked are far in the past and adequate medical records are not available. Id. "When the onset of disability must be inferred because a definite onset date cannot be determined from the medical evidence in the record, the ALJ must obtain expert testimony." *Moon v. Colvin*, 542 Fed. Appx. 646, 647 (9th Cir. 2013).

B. Relevant Medical Record

Plaintiff's appeal alleges disability based on psychiatric impairments and symptoms. Hence, Plaintiff's history of physical impairments will not be thoroughly discussed in this order.

In June 2008, Plaintiff began complaining of anxiety to her primary health care provider at Emmanuel Medical Center. AR 381. She was prescribed medication for acute anxiety in October 2008. AR 363. She continued to consistently complain of anxiety through 2009 at Golden Valley Health Center. In December 2008, Plaintiff was hospitalized heart palpitations and chest pain. It was determined that her symptoms were not cardiac in nature. AR 382. Upon discharge, Plaintiff was advised to see a neurologist and a gastroenterologist, but not a mental health care professional. AR 383. During 2008 and 2009, Plaintiff visited her primary care provider almost monthly with complaints of pain and anxiety. See AR 263-517. However, her chief complaints were usually back and body pain, and not all appointments identified complaints of mental health symptoms. Plaintiff reported that medication helped her pain and anxiety symptoms. There were also several periods when Plaintiff was not consistently taking her medication. Plaintiff did not see a mental health care professional until May 2010, when she referred for a consultative

psychological examination by Philip M. Cushman, PhD., a clinical psychologist, by the Department of Social Services ("DSS"). After this appointment, Plaintiff began seeing Pete Thompson, L.C.S.W. in June 2010. AR 630. She continued to see him occasionally through 2013.

In his written report, Dr. Cushman discussed Plaintiff's family and medical history. He noted that she was taking Klonopin over the past year but had not taken it for a month. He noted that she said she talked to a therapist at Golden Valley who helped her manage her PTSD. Dr. Cushman diagnosed Plaintiff with sexual abuse as a child, physical and sexual abuse as an adult, PTSD, pain disorder associated with both psychological factors and a general medical condition, polysubstance dependence in full remission, and dependent personality disorder. He also noted psychosocial stressors of unemployment and history of abuse. He noted that Plaintiff would benefit from ongoing outpatient psychiatric treatment in the form of antidepressant medications and supportive counseling. Dr. Cushman opined that Plaintiff would have difficulties with regular attendance and consistent participation, as well as working a normal day or work week, because of complaints of pain, anxiety, and malaise. He noted that she would have some difficulties dealing with the usual stressors encountered in a work environment. He opined that she may need special or additional supervision to help her manage interpersonal relationships in the work setting.

C. Analysis

It is Plaintiff's burden to demonstrate disability prior to the date last insured. Here, the ALJ found that Plaintiff was not under a disability at any time through December 31, 2008, the date last insured. The ALJ properly found that the record does not contain any specialized mental health care notes during 2008. The record shows that Plaintiff regularly sought medical care for her pain and anxiety, but did not seek and was not referred to a psychiatrist or therapist until May 2010, when she was referred by DDS based on her claims of disabling mental health symptoms. The ALJ also correctly noted that there are very few clinical findings prior to May 2010 that indicate that Plaintiff was disabled due to psychiatric symptoms or impairments. No health care provider noted any limitations based on her anxiety or mental health symptoms. Other than medication, there is no evidence in the record that further treatment was recommended or sought. Plaintiff was also inconsistent with taking her mediation, including during the time of her examination with Dr.

Cushman.

In addition, the ALJ noted that, during the relevant time period, Plaintiff was essentially independent in self-care, and had some ability to perform household chores. She handled her own finances. She spent time with family members and went out alone. She stated that she could pay attention and follow written instructions adequately. These contentions are also supported by the record. Plaintiff also stated in her function report in March 2010 that she was able to follow written instructions and that she had no problems paying attention. AR 214. She also noted that she got along well with authority figures. Therefore, based on the medical record and the evidence provided by Plaintiff, the ALJ properly found that Plaintiff was not under a disability at any time through December 31, 2008.

Plaintiff's only issue on appeal is that the ALJ erred in finding Plaintiff's disability onset date to be May 26, 2010 without calling a medical expert. However, the specific disability onset date is immaterial in this case, where the ALJ made a separate and distinct finding that Plaintiff was not under a disability at any time through December 31, 2008. As discussed, this finding is supported by the record. Overall, the ALJ properly considered the evidence before him in making his finding that Plaintiff was not disabled during the relevant time period between the alleged onset date and the date last insured. Further proceedings to determine the precise disability onset date are not required.

## IV. Conclusion and Order

For the foregoing reasons, the Court finds that the ALJ applied appropriate legal standards and that substantial credible evidence supported the ALJ's determination that Plaintiff was not disabled during the relevant time period. Accordingly, the Court hereby DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

Dated: **January 15, 2016**

**/s/ Sandra M. Snyder**
UNITED STATES MAGISTRATE JUDGE